IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILED
JUN 27 2008
U.S. DISTRICT COURT
CLARKSBURG, WV 26301

CLAIR ALLEN LOVERIDGE,

Petitioner,

v.　　　　　　　　　　　　　　　　　　　　　Civil Action No. 1:06cv6
　　　　　　　　　　　　　　　　　　　　　　Criminal Action No. 1:03cr63(1)
　　　　　　　　　　　　　　　　　　　　　　(Judge Keeley)

UNITED STATE OF AMERICA,

Respondent.

## OPINION/REPORT AND RECOMMENDATION

On January 6, 2006, the *pro se* petitioner, Clair Loveridge ("Loveridge"), filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct his Sentence. The undersigned, on May 22, 2006, conducted a preliminary review and found that summary dismissal was not prudent, and ordered the respondent to answer. On June 29, 2006, the respondent filed an answer. Loveridge responded on July 20, 2006, and subsequently filed three Addendums in support of his claim.

On August 30, 2007, the undersigned filed a Report and Recommendation with the United States District Judge. The Court granted two motions, one on September 12, 2007, and one on October 12, 2007, by Loveridge to extend the time to file objections. On April 17, 2008, the Court then adopted-in-part and vacated-in-part the undersigned's recommendations and remanded, based on LR PL P 83.01, et seq., and Standing Order No. 4, for further consideration. On June 16, 2008, petitioner filed supplemental information for the consideration of the

undersigned.

## I. Facts

### A. Factual History

On November 12, 2003, the Morgantown Police Department responded to a call at the Suncrest pharmacy. Once on the scene, the Police found a device that was later found to contain explosives, a garbage bag, and a cordless drill. The petitioner was also found close to the Suncrest pharmacy. The door to the back of the pharmacy had holes drilled into it and the bottom pried upwards. After obtaining a search warrant the police found a rifle and more devices like those found at the pharmacy in the house of the petitioner.

### B. Conviction and Sentence

On April 20, 2004, Loveridge signed a plea agreement by which he agreed to plead guilty to Count Five of the indictment, felon in possession of a firearm in violation of Title 18, United States Code, Section 922(g)(1). See Plea Agreement (crim. dckt. no. 34) at 1. The language of the plea agreement, in reference to Loveridge's rights to appeal and to collaterally attack his sentence, reads:

> 10. Mr. Loveridge is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742, in exchange for the concessions made by the United States in this plea agreement. The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28 United States Code, Section 2255. The United States waives its right to appeal the sentence. The parties have the right during any appeal to argue in support of the sentence.

During the portion of the Rule 11 hearing where the Court was explaining this provision, Loveridge stated that he did not understand. Plea Hearing (dkt. no. 50) at 15-19. The Court then explained what those provisions meant and, in addition provided time for counsel to consult with his client and explain further. Id. at 15-19. Upon reconvening the Rule 11 hearing, Mr. Walker, counsel for Loveridge, expressed to the court what he had explained to Loveridge and what he believed Loveridge understood: stating,

> **Mr. Walker**: That you for giving us that opportunity, Your Honor. I've reviewed the critical portions of both the statutes that Mr. Loveridge brought up. I essentially restated what the Court told Mr. Loveridge, that as a general proposition, people in his position have a right to appeal but due to the waiver provision in the plea agreement, he's going to give up a number of those rights to appeal; told him that there are certain exceptions; a sentence that's imposed in excess of the statutory maximum, also if he believed the Court doesn't have jurisdiction in the first place to listen to the case, he would still retain his right to appeal because that can never be waived.
>
> **The Court**: Right.
>
> **Mr. Walker**: And then, finally, anything that would relate to my failure to perform, ineffective assistance of counsel. So he's - he's aware of the rights. He's aware of the nature of the waiver and he's aware of the exceptions to the waiver. I think he'll tell the Court the same thing.

Id. At 18-19.

After sentencing, Loveridge filed the motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. (dkt. no. 55). In his motion Loveridge claimed, *inter alia*, ineffective assistance of counsel (IAC). Id. On review of the undersigned's Opinion/Report and Recommendation, the Court found that even though there was a valid waiver of rights, Loveridge still had the ability to challenge his sentence based on IAC. (dkt. no. 81) at 21. The Court based this conclusion on the above statements of Mr. Walker, which gave Loveridge the belief that by signing the plea agreement he still had the right to bring an IAC claim. Id. at 21.

3

## C. Federal Habeas Corpus

Pursuant to the Order of the District Judge the only grounds for relief that remain are:

"(1) ineffective assistance of counsel because

    (a) counsel lacked the necessary experience to handle the case,

    (b) counsel failed to speak to a single witness or police officer,

    (c) counsel failed to call an explosives expert,

    (d) counsel forged the dates on the plea agreement,

    (e) counsel failed to object to incorrect base level,

    (f) counsel was not prepared at sentencing,

    (g) counsel failed to provide the petitioner with a copy of ATF lab reports."

(civ. dkt. no. 28).

## II. Standard of Review

The Supreme Court has stated that for claims of IAC a defendant must show that (1) there was a deficient performance by counsel (2) and that this deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 692 (1984). As the Fourth Circuit has explained, "A defendant asserting an IAC claim must therefore satisfy both prongs, and a failure of proof on either prong ends the matter." United States v. Roane, 378 F.3d 382, 406 (4th Cir. 2004).

The Supreme Court has said that in reviewing the performance of counsel, the Court must "eliminate the distorting effects of hindsight" and "evaluate the conduct from counsel's perspective...." Strickland, 466 U.S. at 689. Because this is such a difficult evaluation, the court must "indulge a strong presumption" that counsel's conduct, trial strategy, and tactics are within

4

"the wide range of reasonable professional assistance." Id. at 689. Further, "the standard of reasonableness is highly deferential." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986).

In order to satisfy the general prejudicial effects requirement, the defendant must show that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988), cert. denied, 488 U.S. 843 (1988).

### III. Analysis

Under the standards set forth in Strickland as to IAC, all of these claims should be dismissed as being without merit.

**A. Counsel lacked the necessary experience to handle the case and**

**F. Counsel was not prepared at sentencing.**

The record shows that Mr. Walker had the experience and was prepared to represent Loveridge in his criminal proceeding. First, Mr. Walker negotiated a favorable plea agreement. See Plea Agreement (dkt. no. 34). Next, he filed necessary motions and provided exhibits. See (dkt. no. 50). Finally, the record clearly shows that Mr. Walker argued competently on Loveridge's behalf. Id.

Moreover, Loveridge does not assert that but for counsels alleged lack of experience he

would not have pleaded guilty. To the contrary, the record shows he knowingly and intelligently pleaded guilty after being fully informed of the consequences of his plea by the Court. Id. at 47. This does not meet the high burden set forth in Hill v. Lockhart. Additionally, Loveridge cannot show any prejudice at sentencing as he was sentenced within the applicable guideline range. Therefore, this particular allegation should be dismissed as baseless.

**B. Counsel failed to speak to a single witness or police officer.[1]**

The Supreme Court has stated that "counsel has a duty . . . to make a reasonable decision that makes particular investigations unnecessary" and a "heavy measure of deference" will be provided "counsel's judgments." Strickland, 466 U.S. at 692. Since there were no witnesses to the underlying crime and all of the information that could have been provided by speaking with the police officers was provided or available to counsel in police reports, there was no need to speak with anyone. The conduct of Mr. Walker was well within the realm of prevailing professional norms.

However, even if the Court were to say that counsel's decision was not reasonable, there is neither an indication from Loveridge nor a reasonable probability that he would not have accepted the plea and preferred to go to trial. Further, there is no information that the outcome of the plea hearing would have been different had Mr. Walker spoken with a witness or a Police Officer. Additionally, Loveridge does not assert he can show any prejudice in sentencing as he was sentenced within the applicable guideline range. Therefore, this claim should be dismissed as

---

[1]There appears to be some dispute as to this claim. It appears in the record as though the Court and Loveridge were having a conversation about some kind of investigation that Mr. Walker was conducting. Plea Hearing (dkt. no. 50) at 38. Exactly what kind of investigation was not specified.

meritless.

**C. Counsel failed to call an explosives expert.**

The United States called State Trooper Michael G. Fordyce to testify as an explosives expert during Loveridge's sentencing hearing. Trooper Fordyce was present at the scene on the day of the robbery and observed the explosives. Trooper Fordyce testified that the explosives that were at the scene were fully assembled. He testified that the ATF lab report stated that it contained "potassium perchlorate mixture, aluminum powder . . . [and] sulfer [sic] . . . ." Sentencing Hearing (dkt. no. 50) at 86. He testified that this particular mixture was very volatile and was commonly known as a type of flash powder. He stated that he had no idea as to the "amount of substance in the explosive," only that it was "considerably more than what you'd find in a firecracker." Id. At 87. Finally, Trooper Fordyce stated that the explosive that was found should be classified as a destructive device because

> [It has] no commercial value. It's an improvised explosive that has no acceptable reason for society. It cannot be used in mining. It would not be used in mining because of the short sensitivity of the mixture that was put in there. It's not used as a commercial firework because, obviously, they don't make a commercial firework that big for sale to the public. Well, I guess it would be my opinion, the intent behind it was, was [sic] to destroy the door. I see no other reason to take that explosive to that pharmacy other than to try to destroy the door with it.

Id. At 90.

Mr. Walker expressed several times during the sentencing hearing that Trooper Fordyce had only observed the explosive. Counsel even objected to allowing Trooper Fordyce to offer a legal opinion as to whether the explosives were destructive devices. Mr. Walker questioned Trooper Fordyce about his opinion that the explosives were brought to destroy the door and if there could have been other possibilities for the explosives being at the scene. Finally, Mr. Walker

7

questioned Trooper Fordyce about his interaction with the explosives:

> Q. ... Now let's talk about the size of these devices. Did you take out the black powder that was in these devices?
> A. No, we don't disassemble a device.
> Q. Did you test this device?
> A. No. They were sent to the ATF Lab.
> Q. Did you go down to Rockville, Maryland and talk to the person who actually examined the device and weighed the amount of powder that was in it?
> A. No, that was - - that's in the report.
> . . .
> Q. You testified before about the size of the device and you said based on its size you knew it was a destructive device. That's not accurate, is it?
> A. Yes, I think it is. When I'm talking about the size, I'm talking about the sheer explosive - - amount of explosives that it could contain.
> Q. ... You had no idea, and you still have no idea, how much powder was actually inside that device, do you?
> A. No. I didn't take it apart, no.[sic] I don't know.
> . . .
> Q. How can you sit up there and give an opinion about what this device is, what it can do, whether or not it's a destructive device, what it could do to the door, if you have and have never [sic] had any idea how much powder is in that device? You can't do it can you?

Id. at 102-104

Loveridge's defense at the sentencing hearing revolved around the ability to convince the Court that the explosives that were present were not destructive devices. The decision not to bring in an explosives expert was a tactical decision made by Mr. Walker. It was clearly premised on the ability to discredit Trooper Fordyce thereby preventing the Government from meeting its evidentiary burden. The decision was made for a legitimate strategic purpose.

The decision not to bring an explosives expert is one of those decisions that "primarily involve trial strategy and tactics" such as "what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed" and can be made without the defendant's consent. United States v. Teague, 953 F.2d 1525, 1531 (11th

Cir. 1992). It would be error for the Court to look at the decision with the hindsight that it did not work out as well as Mr. Walker had hoped and therefore it was a mistake.

In this instance, "there exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct" to which the Court must be highly deferential. Kratsas v. United States, 102 F.Supp.2d 320, 322 (D.Md. 2000). Counsel must be given leave to "choose a trial strategy from within a wide range of acceptable strategies." Clagett v. Angelone, 209 F.3d 370, 380 (4th Cir. 2000). After making "every effort . . . to eliminate the distorting effects of hindsight" and evaluating "the conduct from counsel's perspective at the time", the undersigned concludes that no error was made by not calling an explosives expert.

Even if it was a mistake not to call an explosives expert, Loveridge did not suffer and does not show it "actually prejudiced the defense to the point that the outcome of the proceeding was unreliable." It is true that the Court stated that Counsel would be "in lot of trouble on the evidentiary weight" if did not call to testify an explosives expert. Sentencing Hearing (dkt. no. 50) at 69. However, the Court qualified this statement by expressly stating that a decision would not be rendered unless it was "satisfied by what [it had] heard and what's in evidence." Id. at 77. Actual prejudice requires more. "Prejudice," for purposes of an ineffective assistance of counsel claim, means that but for counsel's unprofessional error, there is reasonable probability that the result of the proceedings would have been different. Loveridge has failed in his burden of showing how the outcome would have been different if his counsel had not erred.

**D. Counsel forged the dates on the plea agreement.**[2]

---

[2]There is some question as to the raising of this issue. The record shows that Loveridge had every opportunity to object to the alleged forged date on the plea agreement at the plea hearing. In fact, the Court at one point asked about the time prior to signing the plea agreement.

Even assuming the date was forged there is neither an indication from Loveridge nor a reasonable probability that he would have not signed the agreement and preferred to go to trial. It was clear from the proceedings that Loveridge wanted to plead guilty, he understood what was going on, and that he signed the agreement of his own will and volition. In fact, the Court found that the plea was "freely and voluntarily made." Id. at 47. Therefore, even if one were to assume that there was a forged date on the document, there is neither a reasonable probability nor a statement from Loveridge, that he would have preferred to go to trial.

### E. Counsel failed to object to incorrect base level.

This claim by Loveridge is refuted by the record. Counsel made four objections to the pre-sentence report, two of which challenged the petitioner's base offense level. First, counsel objected to whether the explosives were used during the crime. Second, counsel objected to the definition of the explosives as destructive devices[3]. However, the probation officer found these objections to be unpersuasive and the Court overruled counsel's objections. Therefore, this claim has no merit and should be denied.

### G. Counsel failed to provide the petitioner with a copy of ATF lab reports.

During the proceedings Loveridge asserts that Mr. Walker did not provide him with the ATF lab reports labeled Defendant's Exhibit D. But without directly addressing whether there was deficient performance in not providing those lab reports, it is clear that this would not have had a prejudicial affect on the defendant. First, it would have not changed the outcome of the

---

Plea Hearing (dkt. no. 50 ) at 14. This would have been the perfect time raise this issue.

[3]In objection three and four, counsel contested how many criminal history points should be awarded.

sentencing hearing. Next, there is neither a claim from Loveridge nor a reasonable probability that he would have not pleaded guilty and gone to trial had he obtained the ATF lab reports before the plea hearing. In fact, when looking at the substance of the laboratory reports, one finds that they provide no information as to whether the explosives that were found were destructive devices. Def. Ex. D. This does not meet the standard set forth in Strickland and, therefore, this ground should be dismissed as meritless.

## IV. Recommendation

Based upon a review of the record, the undersigned recommends that the Loveridge's §2255 motion be **DENIED and DISMISSED** from the Court's active docket because he received effective assistance of councel.

Within ten (10) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic

Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: June 27, 2008

                                                       JOHN S. KAULL
                                                      UNITED STATES MAGISTRATE JUDGE